**JOHN DRITZ & SONS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 3231; Protest No. 64/21063–103463.**

United States Customs Court
Second Division.

Dec. 19, 1967.

Allerton deC. Tompkins, New York City, for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Harold L. Grossman, New York City, trial attorney), for defendant.

Before RAO, Chief Judge, and FORD, Judge.

RAO, Chief Judge:

The imported merchandise under protest herein is invoiced as "Toyo Paper Cord Sewing Baskets." These baskets were classified under item 389.70 of the Tariff Schedules of the United States as articles, not specially provided for, of textile materials, other, and duly assessed thereunder with duty at the rate of 20 per centum ad valorem.

The plaintiff claims that the baskets are not composed of textile materials within the meaning of the Tariff Schedules of the United States and that the merchandise should be assessed with duty at the rate of 17½ per centum ad valorem under schedule 2, part 4, subpart D, item 256.90, of the Tariff Schedules of the United States, as articles of paper.

The pertinent portions of the statutes involved herein are as follows:

Classified under:

Schedule 3, part 7, subpart B:

> Articles not specially provided for, of textile materials:
>
> \* \* \* \* \* \*
>
> [Item]
> 389.70 Other .......... 20% ad val.

Claimed under:

Schedule 2, part 4, subpart D:

> Article, of pulp, of papier-mâché, of paper, of paperboard, or of any combination thereof, not specially provided for:
>
> \* \* \* \* \* \*
>
> Other:
>
> \* \* \* \* \* \*
>
> [Item]
> 256.90 Other ........ 17.5% ad val.

The record herein is comprised of the testimony of one witness for the plain-

tiff, three exhibits introduced by the plaintiff, and one exhibit introduced by the defendant.

Plaintiff's exhibit 1 is a basket representative of the imported merchandise.

Plaintiff's collective exhibit 2 consists of three strands of the paper material used in producing the baskets at bar.

Plaintiff's exhibit 3 is a strand of paper yarn used in producing defendant's illustrative exhibit A, a Toyo cloth place mat.

During the course of trial, counsel for the respective parties hereto entered into the following oral stipulation:

* * * the baskets are in chief value of 2-ply material representative [sic] by Collective Exhibit 2, which material is referred to by the plaintiff as a paper cord, and by the defendant as a paper yarn about $\frac{4}{32}$ inches thick, each ply of which is about $\frac{2}{32}$ inches thick, composed of paper produced by lengthwise rolling or twisting on some of the cord or yarn, they are wrapped in cellophane.

The manufacturing process of this paper cord or yarn is: First, pulp is dissolved by caustic soda, and next, pulp solution is made into paper of about 100 cm width. Then, the paper is delivered in rolls to a mill, where the paper is cut into strips of about 1¾ inch width and then twisted by machine into paper cord or yarn. When sewing baskets are made, this paper cord or yarn is interlaced by hand on the outside of the baskets.

The sole witness, Mr. Philip T. Yonekura, the president of an importing firm, testified that he has been in the textile importing business for a period of 16 years, 11 of which were in Japan, 5 in the United States, and that he handles about 6,000,000 yards of textile material a year, which include woolen, cotton, rayon, and synthetic fabrics, as well as paper; that he has made a study of the different kinds of textile-woven fabrics produced in Japan as he has had close contact with the Japanese textile trade during the said 16 years.

He testified that the textile-woven fabrics produced in Japan have the common characteristics of smoothness and evenness with reasonable softness, flexibility, and suppleness; that, in his opinion, material like that of exhibit 2 is not a yarn that is suitable for making textile fabrics because it is too thick and too stiff and lacks flexibility; that material like that of exhibit 2 could be used for making handles for shopping bags or similar purposes and baskets like exhibit 1; that material like that of exhibit 2 cannot be woven as it is too thick and too stiff; that if it were woven, there would be holes between the weaving; and that the said material is called paper cord or rope and has never been referred to as yarn.

On cross-examination, Mr. Yonekura testified that exhibit 2, the material from which exhibit 1 was manufactured, cannot be woven; that, in his understanding, the weaving process consists of a warp yarn and a weft yarn; that the weft yarn runs through either left to right or right to left; and that the material, exhibit 2, cannot be used for weaving by machine or by hand, but that the basket, exhibit 1, was manufactured by manually interweaving or intertwining the material in exhibit 2 over black strips of wood.

The witness further testified that strands of paper like exhibit 3 are woven. However, strands or cords like those of exhibit 2 are not suitable for making a woven fabric although they can be used to make such articles as ladies' handbags which, from a technical point of view, can be woven with the use of a stick or without the use of a stick.

Upon the basis of the foregoing, it is claimed by the plaintiff that the importation herein is not composed of "paper yarns" or "yarns, of paper," as defined by the tariff schedules, because the paper cord or yarn, such as in exhibit 2, is not suitable for making woven fabrics.

Plaintiff further contends that the provision under which the baskets under protest were assessed, item 389.70, does not mention "paper yarns" and, there-

fore, the then collector of customs should not have applied the definition of "paper yarns," which appears in headnote 1(b), schedule 3, part, 1, subpart F, of the Tariff Schedules of the United States, to the articles under litigation.

The defendant, on the other hand, urges that the collector was correct in applying this definition and that the plaintiff has failed to sustain the burden of proof incumbent upon it of establishing that the imported merchandise did not possess the required characteristics necessary for classification under item 389.70 of the Tariff Schedules of the United States.

The term "textile materials" which has been invoked by the collector for the classification of the articles in issue is defined in headnote 2(a) (ii), (vi), of said tariff schedules as follows:

Headnote 2(a) (ii), (vi), schedule 3: For the purposes of the tariff schedules—

(a) the term *"textile materials"* means—

*   *   *   *   *   *

(ii) the yarn intermediates and the yarns provided for in part 1 and part 4 (elastic yarns) of this schedule,

*   *   *   *   *   *

(vi) articles produced from any of the foregoing products; [Emphasis quoted.]

Since it has been agreed between the parties that the component material of chief value of the article herein is paper, in order for it to be a "textile material" within the foregoing definition, it must have been in the form of a yarn as provided for in part 1 or part 4 of the Tariff Schedules of the United States. Insofar as paper is concerned, the only relevant provision in either of those parts is that found in part 1, subpart F, headnote 1(b) which reads as follows:

For the purposes of the tariff schedules—

*   *   *   *   *   *

(b) the term *"yarns, of paper"* or *"paper yarns"* means paper which is

in the form of strips not over 0.06 inch in width, or in the form of filaments made from strips by lengthwise rolling or folding, by twisting, or by similar processes, whether or not coated or impregnated with other materials, and which is suitable for making woven fabrics. [Emphasis quoted.]

Hence the question to be resolved in this case is whether the strands or cords of the paper material used in producing the baskets at bar are "paper yarns" or "yarns, of paper" of the kind which are suitable for making woven fabrics. And in view of the stipulation as to the width and method of production of these strands, the precise point in issue is whether or not they are suitable for making woven fabrics.

■ It is well established that tariff terms are presumed to have been used by Congress in accordance with their meaning in the language of commerce and, unless a special commercial designation is shown, which is not the case here, the commercial meaning is presumed to be the same as the common meaning. Floral Arts Studio, et al. v. United States, 46 CCPA 21, C.A.D. 690.

■ Common meaning is a matter of law to be determined by the courts on a case by case basis. Marshall Field & Co. v. United States, 45 CCPA 72, C.A.D. 676. As an aid to their understanding of what such meaning is, the courts have often consulted and relied upon lexicons and other standard authorities.

In Encyclopaedia Britannica, 14th edition, the word "weaving," the present participle of the statutory "woven," is defined as follows:

Weaving. The process of weaving consists in interlacing at right angles, two or more series of flexible materials, of which the longitudinal are called warp and the transverse weft.

Reference to the explanatory notes contained in the Tariff Classification Study to schedule 3, part 3, one of a 10-volume report prepared for the United States Tariff Commission for the use of

Congress in revising the Tariff Act of 1930, reveals the following comments:

> Throughout this part (and elsewhere in schedule 3, with minor exceptions, for example, billiard cloth and bolting cloth in part 4) the word "fabric" is employed. This is intended to have the same meaning as the word "cloth," a word which often is used instead of, or interchangeably with, "fabric" in the existing schedules and elsewhere in textile literature.

It may, therefore, be assumed that, in expressing a definition of "yarns of paper" or "paper yarns" in terms of filaments suitable for making woven fabrics, Congress employed the word "fabric" in the context indicated, that is to say, synonymously with "cloth."

■ Whether or not the operations involved in producing the baskets in issue may be construed as a kind of weaving, a point not necessary for the decision herein to reach, and hence rendering irrelevant the cases cited by counsel for defendant, it is clear that they did not first create a fabric which in turn was formed into a basket. The record shows that strands of paper, like plaintiff's exhibit 2, were intertwined by hand over and under black strips of wood which presumably formed the frame of the basket. The record also shows and our own examination of the material in issue reveals that it is too hard, too stiff, and too thick and lacks the necessary flexibility and suppleness for making textile fabrics.

By contrast, the softness and flexibility of the paper strands which comprise plaintiff's exhibit 3 constitute the very qualities which permit their use in weaving fabric as is evidenced by defendant's illustrative exhibit A.

By reason of the foregoing considerations, we do not deem it expedient to explore the implications of plaintiff's contention that the collector should not have applied the statutory definitions of yarn hereinabove quoted. We are of opinion that the articles at bar are not articles of textile materials within the context of that term as used and defined in schedule 3 of the Tariff Schedules of the United States. Since they have been shown to be in chief value of paper, they are properly provided for, as claimed, in item 256.90 of schedule 2, part 4, subpart D, at the rate of 17.5 per centum ad valorem. The claim in the protest to that effect is sustained. All other claims are, however, overruled.

Judgment will be entered accordingly.